**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

<table>
<tr><td>

TAYLOR CRUZ,

                    Plaintiff,

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, *et al*.,

                    Defendants.

</td><td>

Civil Action No. 24-6938 (JXN)(AME)


<u>**OPINION**</u>

</td></tr>
</table>

<u>**NEALS**</u>, District Judge

Before the Court is Defendants Port Authority of New Jersey and New York ("Port Authority"), The Port Authority Trans-Hudson Corporation ("PATH"), and Jessica Carmona's ("Carmona") (collectively, "Defendants") motion for summary judgment. (ECF No. 29.) Plaintiff Taylor Cruz ("Plaintiff") opposed (ECF No. 35), and Defendants replied (ECF No. 36). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion for summary judgment (ECF No. 29) is **GRANTED in part**.

I.      **BACKGROUND**

      A.      **Statement of Facts**[2]

Plaintiff has worked for PATH, a subsidiary of the Port Authority, since 2021. (DSMF ¶ 2.) She performs maintenance on PATH's railcars at the Harrison Car Maintenance Facility

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] The Court derives the undisputed facts from Defendants' statement of material facts (*See* Defs.' Statement of Undisputed Material Facts ("DSMF"), ECF No. 29-14); Plaintiff's reply thereto (*See* Pl.'s Resp. to DSMF ("PRSMF"), ECF No. 35-2); and record evidence. The Court disregards portions of "the parties' statements of material facts that either lack citation to relevant record evidence and/or contain legal argument or conclusions." *Jones v. Sanko Steamship Co., Ltd*, 148 F. Supp. 3d 374, 380 n.9 (D.N.J. 2015) (citing L. Civ. R. 56.1(a)). Likewise, the Court

("Facility"). (*Id.* ¶ 3.) The first floor of the Facility has "an open layout with train tracks where cars are carried in for maintenance and cleaning." (*Id.*) The second floor "has employee break rooms and locker rooms." (*Id.*) The third floor "has management offices and a lunchroom." (*Id.*)

Plaintiff gave birth and went on maternity leave in April 2023. (*Id.* ¶ 4.) In the meantime, PATH began "installing a permanent 'Mother's Room' at the [Facility], which is a designated space created specifically for use by lactating mothers." (*Id.* ¶ 5.) Several weeks before returning to work, on August 10, 2023, Plaintiff emailed Carmona, her "business manager," that she needed a place to express breastmilk. (*Id.* ¶¶ 5–6.) Carmona replied with a list of all "mother rooms" within the Port Authority. (*See* Def.'s Ex. 3, ECF No. 29-4.) Plaintiff responded that she felt "the only sanitary place to pump will be the [second] floor locker room[,] not the bathroom." (*Id.*) Plaintiff requested that PATH place a sign outside the locker room while Plaintiff used it to express. (*Id.*)

When Plaintiff returned to work on September 5, 2023, she used the second-floor women's locker room to express. (DSMF ¶ 9.) But Plaintiff found the locker room neither sanitary nor private, so she emailed Carmona to explain it was not "an adequate space for [her] to express [her] breastmilk." (*Id.* ¶¶ 10–11.) PATH "immediately" offered Plaintiff a "vacant office on the third floor" to express until PATH installed a permanent "Mother's Room" at the Facility. (*Id.* ¶¶ 12–14.) The third-floor office was "shielded from view by those outside it and could be locked from the inside." (*Id.* ¶ 15.)

Yet PATH did not give Plaintiff a key to the third-floor office until November 8, 2023. (*Id.* ¶ 29.) According to Defendants, "the office was slated to be used by management personnel and confidential documents would eventually be kept in the office, thus PATH did not want copies of

---

considers facts undisputed where the opposing party's response relies on "improper arguments, conclusions, and purported disputes of fact without proper citation to the record." *Smith v. Township of Clinton*, No. 17-935, 2018 WL 4188457, at *1 (D.N.J. Aug. 31, 2018), *aff'd*, 791 F. App'x 363 (3d Cir. 2019).

the key being made." (*Id.* ¶ 16.) When Plaintiff needed to express, she had to ask Carmona, Carmona's assistant,[3] or Carmona's supervisor[4] for the key to the office. (*Id.* ¶ 17.) Plaintiff testified she did not feel comfortable asking Carmona's supervisor. (Pl.'s Dep. 29:21–30:1, ECF No. 29-3.) Though Plaintiff could, at times, use the third-floor office without issue, she was unable to access the office on several occasions. (DSMF ¶19.) As a result, Plaintiff "began using a different room on the third floor" to express. (*Id.* ¶ 20.) This unoccupied room was known as the "COVID Room."[5] (*Id.* ¶ 21.) Plaintiff claims Carmona's assistant gave her permission to use the COVID Room, though Carmona's assistant did not recall ever doing so. (*Compare* Pl. Dep. 33:4–5, *with* Regala Dep. 15:7–16:18, ECF No. 29-11.)

Plaintiff used the COVID Room to express until October 13, 2023. (*See* DSMF ¶ 22.) On that day, cleaning staff reported they could not access the COVID Room. (Carmona Dep. 45:1–5.) Carmona investigated and found a sign on the COVID Room door stating that the room was in use for lactation. (*Id.* at 45:7–13.) Though Carmona was at the Facility that day, Plaintiff did not ask her for a key to the third-floor office. (Pl. Dep. 32:22–33:1.)

After Plaintiff finished expressing, she met with Carmona and Plaintiff's union representative in Carmona's office. (*See id.* at 33:9–13; Carmona Dep. 45:24–46:12.) During the meeting, Carmona told Plaintiff to stop expressing in the COVID Room because outside consultants were scheduled to use the COVID Room as their temporary office.[6] (DSMF ¶ 22.) Plaintiff described the meeting as "hostile." (*See* Pl.'s Dep. 32:2–9.) Plaintiff alleges Carmona

---

[3] Esther Regala.

[4] Ian Mitchell.

[5] This room was called the "COVID Room" because it was originally used for employees who were not yet vaccinated during the COVID-19 pandemic. (Carmona Dep. 41:13–16, ECF No. 29-6.) When Cruz began expressing in the room, however, it was no longer being used for that purpose. (*Id.* at 41:20–23.)

[6] Plaintiff denies that she was provided a reason for not using the COVID Room. (PRSMF ¶ 22.) But because Plaintiff does not cite to the record, the Court deems this fact undisputed. *Smith*, 2018 WL 4188457, at *1.

asked, "in a very aggressive tone," who gave Plaintiff permission to use the COVID Room. (*Id.* at 33:14–17.) Plaintiff claims that, during the meeting, Carmona said Plaintiff was "PMS-ing," PATH is "a male railroad," and by the time PATH would be able to accommodate Plaintiff, her "one year of pumping will be up." (*See* PRSMF ¶ 23; Pl.'s Dep 33:21–34:2.) Carmona denies she ever made those statements.[7] (*See* Carmona Dep. 48:2–12.) Neither Plaintiff nor Carmona recall Plaintiff mentioning her inability to access the third-floor office at that meeting. (DSMF ¶ 24.)

Three days later, on October 16, 2023, Plaintiff voluntarily went out on sick leave because she felt she did not have adequate space to express.[8] (*Id.* ¶ 25.) On November 3, 2023, Plaintiff emailed Carmona, stating:

> I have one week left of sick leave, please confirm that upon my return to work I will be given access to a room to express milk that complies with NJ state law. Specifically, the NJ PUMP Act and the NJ Law Against Discrimination. If accommodations won't be made, please confirm that in writing.

(*See* Defs.' Ex. 7 at *2–3,[9] ECF No. 29-8.) Five days later, Plaintiff was given a key to the third-floor office. (DSMF ¶ 29.) After receiving the key, Plaintiff used the third-floor office to express "without issue." (*Id.* ¶ 30.)

### B.      Procedural History

Plaintiff sued the Port Authority and Carmona in state court on January 17, 2024. (*See* Compl., ECF No. 1-2 at *5–9.) The Complaint included a claim under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12. (*Id.*) Plaintiff then amended the Complaint, which included claims for: (1) a violation of the Providing Urgent Material Protections for Nursing

---

[7] As the Court cannot weigh evidence or make credibility determinations, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the Court deems Carmona's remarks disputed.

[8] Plaintiff disputes that she took sick leave voluntarily and claims "the record indicates it was a constructive requirement." (PRSMF ¶ 25.) Plaintiff, however, does not accompany her assertion with a record citation, and the Court deems this fact undisputed. *Smith*, 2018 WL 4188457, at *1.

[9] Pincites preceded by an asterisk (*) use ECF pagination.

Mothers Act ("PUMP Act"), 29 U.S.C. § 218d ("Count I"); a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3) ("Count II"); a hostile work environment, in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e ("Count III"); disparate treatment, in violation of Title VII ("Count IV"); and a violation of the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg ("Count V"). (Am. Compl., ECF No. 1-2 at *23–31.) Defendants timely removed to this Court. (*See* Notice of Removal, ECF No. 1.) Plaintiff later amended the complaint again to add PATH as a Defendant. (*See* Second Am. Compl., ECF No. 13.)

Defendants moved for summary judgment. (*See* Mot. Summ. J., ECF No. 29.) Defendants argue that (1) the FLSA claim fails because Plaintiff denied any retaliation; (2) the hostile work environment claim fails because Plaintiff did not identify any severe or pervasive discriminatory conduct; (3) Plaintiff did not advance any evidence of disparate treatment; (4) Defendants did not violate the PUMP Act because Defendants timely provided Plaintiff with statutorily compliant accommodations; and (5) Defendants did not violate the PWFA because they provided reasonable accommodations to Plaintiff in good faith. (*See* Defs.' Moving Br., ECF No. 29-13.) Defendants also argue that the claims against Carmona should be dismissed because (1) she was not Plaintiff's supervisor, and (2) individual employees cannot be held liable under Title VII or the PWFA. (*Id.*) Plaintiff opposed (*see* Pl.'s Opp'n, ECF No. 35), and Defendants replied (Defs.' Reply, ECF No. 36.)

After reviewing the record, the Court administratively terminated the motion and requested additional briefing as to (a) whether Plaintiff was required to exhaust her administrative remedies on any or all her claims, and (b) if Plaintiff was required to exhaust her remedies, whether she did so. (*See* Text Order, ECF No. 37.) The parties submitted supplemental briefs. (*See* Defs.' Supp.

Br., ECF No. 38; Pl.'s Supp. Br., ECF No. 39.) The parties agree Title VII's exhaustion requirement does not apply to Counts I (PUMP Act) or II (FLSA); and that Plaintiff exhausted her administrative remedies as to Count III (Hostile Work Environment) and V (PWFA). (*See* Defs.' Supp. Br.; Pl.'s Supp. Br.) But the parties disagree about whether Plaintiff exhausted her administrative remedies for Count IV (Disparate Treatment): Plaintiff claims she did (*see* Pl.'s Supp. Br. at *4–6); Defendants argue she did not (*see* Defs.' Supp. Br. at 3–4.)

## II.    LEGAL STANDARD

Under Rule 56(a), the Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must show no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

The Court may not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255. "All facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The non-moving party, however, must offer more than a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation

6

and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

### III.    **DISCUSSION**

#### A.    **PUMP Act (Count I)**

The PUMP Act requires an employer to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2). Before suing under the PUMP Act, an employee must (a) "notify the employer . . . of the failure to provide" a compliant space to express breastmilk; and (b) "provide the employer with 10 days after such notification to come into compliance" with the PUMP Act. 29 U.S.C. § 218d(g)(1). The notification requirement does not apply if "the employer has indicated that the employer has no intention of providing the place" required under the PUMP Act. 29 U.S.C. § 218d(g)(2). An "employer" means "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

The parties do not contest that Carmona "immediately" offered Plaintiff the third-floor office after Plaintiff complained about the second-floor locker room. (DSMF ¶¶ 12–14.) And the parties agree the third-floor office was (1) a place "other than a bathroom" (2) "that is shielded from view" (3) and "free from intrusion from coworkers and the public." (*See* PRSMF ¶ 15.) But the parties dispute whether the third-floor office was a place "which may be used by an employee to express breast milk." Plaintiff argues the third-floor office did not comply with the PUMP Act because a temporary nursing space "must be available when needed by the employee in order to meet the statutory requirement." *Private Space to Pump Breast Milk*, U.S. Dep't of Labor, https://www.dol.gov/agencies/whd/fact-sheets/73-flsa-break-time-nursing-mothers (last visited June 1, 2026). Plaintiff asserts that the third-floor office was not available when needed because

she did not have a key, had to ask her supervisor and supervisor's assistant for a key whenever she needed to pump, and repeatedly had difficulty accessing the office. (Pl.'s Opp'n at 12–13.) Defendants counter that Plaintiff had no trouble accessing the office. (Defs.' Reply at 3–4.) Yet this is precisely the kind of factual dispute reserved for the factfinder. The Court may not "weigh the evidence and determine the truth of" whether Defendants made the third-floor office available to Plaintiff whenever needed. *Anderson*, 477 U.S. at 249. Accordingly, the Court cannot determine, as a matter of law, that the third-floor office complied with the PUMP Act.

Defendants also contend that summary judgment is warranted because Plaintiff failed to comply with the PUMP Act's notice requirement. According to Defendants, even if Plaintiff could not access the third-floor office, she formally notified Defendants about it a week before she returned from her sick leave, after which point, Defendants promptly gave her a key. (*Id.* ¶¶ 26–28.)

The Court is unpersuaded. The law "does not require any formal mechanism or 'magic words' to notify an employer." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506–07 (3d Cir. 2010) (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003)). But the notice "nonetheless must make clear that" the employer has failed to provide a PUMP Act compliant lactation space. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). The employer "must have enough information to know" the space is non-compliant, or the "circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for" a compliant space. *Conneen*, 334 F.3d at 332. Here, while Defendants claim Plaintiff formally notified them for the first time right before she returned from sick leave, Plaintiff asserts that (1) Carmona's assistant knew of Plaintiff's difficulty accessing the third-floor office; (2) Plaintiff's repeated difficulties in accessing the third-floor office put Defendants on notice that

8

the office was not "made available" to her; and (3) at least as of the October 13, 2023 meeting with Plaintiff, Defendants expressed they had no intention of providing a compliant space. And, even though Plaintiff emailed Defendants on November 3, 2023, to request "access to a room to express milk that complies with NJ state law," that email mentioned neither the key nor the third-floor office. (*See* Defs.' Ex. 7 at *3.) Viewing the facts in the light most favorable to the non-moving party, a reasonable juror could conclude that Defendants already knew Plaintiff needed a key to the third-floor office. But that is a question for the jury to decide.

Because there are genuine factual disputes as to (1) whether the third-floor office was made available to Plaintiff; and (2) whether Plaintiff put Defendants on notice that she could not access the third-floor office, summary judgment is **denied** as to Count I.

### B.     FLSA (Count II)

A plaintiff's failure to respond to a "defendant's arguments on summary judgment constitutes an abandonment of these causes of action." *Shaporov v. Levine*, No. 22-1150, 2025 WL 2731460, at *6 (D.N.J. Sept. 25, 2025) (collecting cases) (quoting *Greene v. Elizabeth Police Dep't*, No. 18-8972, 2023 WL 6233124, at *5 (D.N.J. Sept. 26, 2023)); *Player v. Motiva Enters., LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007) ("The nonmoving party cannot later argue, on appeal, that there is evidence in the record that creates a genuine issue of material fact, if that evidence was not pointed out to the district court at the time of the motion for summary judgment.").

Defendants argued that FLSA did not create a private cause of action for failure to provide a workplace accommodation. (Defs.' Moving Br. at 7.) Rather, Defendants asserted that FLSA provides a cause of action for retaliating against an employee who engages in FLSA protected conduct. (*Id.*) But, according to Defendants, Plaintiff expressly denied that Defendants engaged in

9

any retaliatory conduct. (*Id.*) Plaintiff does not address Defendants' FLSA arguments in her opposition papers. Therefore, summary judgment is **granted** as to Count II.

### C.      Hostile Work Environment (Count III)

To state a hostile work environment claim under Title VII, the plaintiff must show (1) they "suffered intentional discrimination because of" a protected characteristic; (2) the discrimination was "severe or pervasive"; (3) the discrimination "detrimentally affected the plaintiff"; (4) the discrimination would "detrimentally affect a reasonable person in like circumstances"; and (5) *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). "A viable hostile environment claim stems from extremely insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace." *Hamarneh v. United Airlines*, No. 24-5962, 2026 WL 183764, at *6 (D.N.J. Jan. 23, 2026) (quoting *Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018)).

#### i.      *Causation*

Plaintiff must prove the complained-of conduct "would not have occurred but for" her sex or her recent pregnancy.[10] *Id.* (quoting *Rich*, 294 F. Supp. 3d at 281). "Sometimes, the but-for causation element may be established by the nature of the harassment itself." *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 594 (D.N.J. 2015). "An allegation of sexual harassment, for example, may be found adequate where it is based on harassing conduct that is itself sexual in nature." *Id.* In other cases, "the but-for causation element may be established by temporal proximity—for

---

[10] "Title VII's prohibition against sex discrimination includes pregnancy discrimination." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 276 (3d Cir. 2024). Indeed, Title VII defines the terms "because of sex" or "on the basis of sex" to "include . . . because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

example, protected conduct that is closely followed by an adverse action." *Id.* In all cases, however, "there needs to be some allegation that demonstrates the requisite discriminatory tinge" to connect the harassment to the protected characteristic. *Williams v. Hershey Co.*, No. 20-9394, 2021 WL 1686568, at *4 (D.N.J. Apr. 29, 2021).

Here, Plaintiff relies on the allegedly inappropriate remarks Carmona made to Defendant in the October 13, 2023 meeting: that Plaintiff was "PMS-ing," that PATH is "a male railroad," and that by the time PATH would be able to accommodate Plaintiff, her "one year of pumping will be up." (*See* Pl.'s Dep 33:21–34:2.) Plaintiff argues that those comments, combined with the "humiliation of being repeatedly walked in on while exposed," comprised a hostile work environment. (Pl.'s Opp'n at 18.)

Carmona's alleged comments directly relate to Plaintiff's recent pregnancy and readily satisfy the but-for causation requirement. But Plaintiff's claim that she was "repeatedly walked in on" does not. Simply put, the record contains no evidence that any coworkers walked in on Plaintiff while expressing *because* she was a recently pregnant woman.[11]

### ii.    Severe and Pervasive Conduct

Harassment is actionable "only if it is so severe and pervasive that it 'alters the conditions of the victim's employment' and creates an 'abusive working environment.'" *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)). "The environment must be objectively hostile, not just hostile in the plaintiff's view." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its

---

[11] Being walked in on while pumping, although an understandably upsetting occurrence, in and of itself has been held not sufficiently severe to establish a hostile work environment claim. *See Lampkins v. Mitra QSR KNE, LLC*, 383 F. Supp. 3d 315, 334 (D. Del. 2019); *Newsome v. City of Philadelphia*, 500 F. Supp. 3d 336, 343 (E.D. Pa. 2020).

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. But Title VII is not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted).

Here, none of the remarks Carmona allegedly made rise to the level of severe or pervasive harassment. To be sure, in "a rare and extreme case," a single incident of harassment can make a workplace hostile. *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 602 (D.N.J. 2016) (quoting *Taylor v. Metzger*, 152 N.J. 490, 500 (1998)). But the record does not demonstrate that the alleged "PMS," "male railroad," or "one year of pumping" comments went beyond merely offensive and unprofessional utterances. *See, e.g.*, *Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017) (finding harassment severe or pervasive where plaintiffs alleged their supervisor "used a racially charged slur in front of them and their non-African-American coworkers" and made "threats of termination."); *Ciocian v. N.J. State Police*, No. 08-6060, 2010 WL 4116475, at *5 (D.N.J. Oct. 15, 2010) ("[W]e find that [the] 'stop bitching' and 'are you having twins' comments are neither severe enough nor, as apparently isolated incidents, pervasive enough to constitute intentional discrimination or harassment or to create a hostile work environment."); *Nuness*, 221 F. Supp. 3d at 602–03 (collecting cases where single-incident hostile work environment claims were dismissed). Instead, Carmona allegedly made the inappropriate comments at a single meeting two years into Plaintiff's tenure at PATH; no harassment occurred after Plaintiff returned to work;

12

there is no evidence that Carmona physically threatened or humiliated Plaintiff; and the facts do not suggest the comments unreasonably interfered with Plaintiff's work performance.

Because Carmona's three isolated comments were not severe or pervasive enough to alter the conditions of Plaintiff's employment, summary judgment is **granted** on Count III.

### D.        Disparate Treatment (Count IV)

#### i.        *Exhaustion of Administrative Remedies*

At the threshold, the Court must consider whether Plaintiff exhausted her administrative remedies for Count IV. "A plaintiff bringing an employment discrimination claim under Title VII must comply with the procedural requirements set forth in 42 U.S.C. § 2000e–5." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010). "Before filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely discrimination charge with the EEOC." *Id.* "The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action." *Id.* "The ensuing suit is limited to claims that are within the scope of the initial administrative charge." *Id.* at 413–14.

The question is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). "The legal analysis for exhaustion is thus not limited to the four corners of the administrative charge." *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019). "Rather, the legal analysis turns on whether the allegations in the judicial complaint are reasonably related to those in the administrative charge." *Id.*

Here, Plaintiff filed an EEOC charge and waited for the EEOC to issue a right-to-sue letter before filing this action. Her EEOC charge stated:

13

> Ms. Cruz was denied reasonable accommodations to pump breastmilk during her shifts for several months. She was often forced to pump in a public bathroom, and was subject to multiple intrusions by coworkers. Ms. Cruz was also repeatedly ridiculed, humiliated, and thwarted by her supervisor (name omitted for purposes of abiding by instructions) for seeking reasonable accommodations. Eventually, Ms. Cruz was forced to take an extended sick leave so she could safely and sanitarily express breastmilk because she could not do so at work. Eventually, Port Authority sent Ms. Cruz a letter acknowledging that moving forward they would be conforming with state and federal law and providing her with reasonable accommodations.

(*See* Defs.' Supp. Ex. 1 ("EEOC Charge") at *18, ECF No. 38-2.)

Defendants argue the EEOC Charge does not reference or provide a basis for a disparate treatment claim. (*See* Defs.' Supp. Br. at 4.) This is unpersuasive. The Court may not limit itself to "the four corners of the administrative charge." *Kopko*, 776 F. App'x at 773. The question is whether "the allegations in the judicial complaint are reasonably related to those in the administrative charge." *Id.* Here, they are. In the EEOC Charge, Plaintiff claimed Defendants refused to provide her with an adequate place to pump breastmilk, and that her supervisor ridiculed her. Those same facts form the basis for Plaintiff's disparate treatment claim. Therefore, the discriminatory acts in Plaintiff's complaint "are fairly within the scope of" her prior EEOC Charge. *Antol*, 82 F.3d at, 1295.

Having resolved the question of whether Plaintiff exhausted her administrative remedies, the Court proceeds to the merits of Plaintiff's disparate treatment claim.

### ii.    The Merits

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e. Title VII, accordingly, outlaws "both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known

14

as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). "Disparate-treatment cases present 'the most easily understood type of discrimination,' and occur where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Id.* (citations omitted). To state a claim for sex-related discrimination, a plaintiff must show (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel*, 706 F.3d at 169 (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

It is undisputed that Plaintiff was in a protected class and qualified for her job. And Plaintiff has identified "facts from which a reasonable juror could infer that [an] alleged adverse action occurred." *Leite v. Sch. Dist. of Phila.*, No. 24-2607, 2025 WL 1564796, at *2 (3d Cir. June 3, 2025). An employment action is adverse when the action causes "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Here, a reasonable juror could infer that actively refusing to give a lactating mother a place to express breastmilk caused "some harm" to an identifiable term or condition of her employment.

Finally, the Court concludes a reasonable juror could conclude "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel*, 706 F.3d at 169. A plaintiff can show an employer's discriminatory motive through direct or circumstantial evidence. Direct evidence "is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case [as is necessary in a pretext action] to shift the burden of production." *Qin v. Vertex, Inc.*, 100 F.4th 458, 472 (3d Cir. 2024) (alteration in original) (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995)).

15

"Discriminatory statements constitute direct evidence of discrimination where there is evidence linking the speaker to the employer's adverse employment action." *Id.*

Here, there is a genuine factual dispute about Defendants' motive. According to Plaintiff, her supervisor (Carmona) refused to provide a compliant lactation space. And, when Plaintiff lactated elsewhere, Carmona told Plaintiff that Plaintiff was "PMS-ing," PATH is "a male railroad," and that by the time PATH would be able to accommodate Plaintiff, her "one year of pumping will be up." (Pl.'s Dep 33:21–34:2.) A reasonable juror could infer Defendants refused to provide Plaintiff with a place to lactate because Plaintiff is a woman and PATH is "a male railroad." But, as before, that is a question for a jury to decide. Accordingly, summary judgment is **denied** as to Count IV.

### E.    The PWFA (Count V)

The PWFA requires covered employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee," unless the employer "can demonstrate that the accommodation would impose an undue hardship on" their business. 42 U.S.C. § 2000gg-1(1). Caselaw on the PWFA is "scant," but courts treat PWFA failure-to-accommodate claims "like analogous claims under the ADA." *Etkins v. Dive N. Hills, LLC*, No. 24-1474, 2026 WL 1487445, at *8 (W.D. Pa. May 28, 2026) (quoting *Trego v. Penske Logistics, LLC*, No. 24-460, 2026 WL 402501, at *7 (M.D. Tenn. Feb. 12, 2026)). Therefore, Plaintiff must show "(1) she is a qualified individual; (2) the employer was aware of her limitation; and (3) the employer failed to reasonably accommodate the limitation." *Ventura De Brown v. Centers Lab NJ LLC*, No. 25-13258, 2026 WL 1329713, at *5 (D.N.J. May 13, 2026) (quoting *Keiper v. CNN Am., Inc.*, No. 24-875, 2024 WL 5119353, at *2 (E.D. Wis. Dec. 16, 2024)).

It is undisputed that Plaintiff, as a lactating person, is a qualified individual, and her employer knew she was lactating. But "[t]he question of whether a proposed accommodation is reasonable is a question of fact." *Lewis v. Univ. of Pa.*, 779 F. App'x 920, 923 (3d Cir. 2019) (alteration in original) (quoting *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 n.4 (3d Cir. 2006)). And "where there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded." *Taylor*, 184 F.3d at 318. Here, there are genuine disputes as to (1) whether a locked office was a reasonable accommodation for Plaintiff to express breastmilk; and (2) whether Plaintiff's employer acted in good faith, particularly given the adversarial October 13, 2023 meeting between Plaintiff and Carmona. Accordingly, summary judgment is **denied** as to Count V.

### F.    Claims against Carmona

Defendants also move for summary judgment as to all claims against Carmona. (*See* Defs.' Moving Br. at 18–20.) Plaintiff does not oppose, but only for those claims where the statute does not provide for individual liability. (Pl.'s Opp'n at 23–24.)

"[I]ndividual employees cannot be held liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996). PWFA claims are analogous to ADA claims, *Etkins*, 2026 WL 1487445, at *8, and "individual supervisors cannot be held liable under the ADA," *Herring v. Ocean Cnty. Bd. of Soc. Servs.*, No. 22-5149, 2023 WL 6213216, at *3 (D.N.J. Sept. 25, 2023) (collecting cases). Accordingly, summary judgment is **granted** as to Counts IV and V to the extent they are against Carmona.

Not so for Plaintiff's PUMP Act claim. The PUMP Act uses FLSA's definition of an "employer," i.e., "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). FLSA imposes individual liability on anyone who exercises

"supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) (quoting *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)). Courts focus on "the totality of the circumstances rather than on technical concepts of the employment relationship." *Id.* at 154 (quoting *Haybarger*, 667 F.3d at 418). Here, the parties dispute whether Carmona exercised supervisory authority over Plaintiff and was responsible for her pumping accommodation. (*See* DSMF ¶ 7; PRSMF ¶ 7.) The Court may not "weigh the evidence and determine the truth of" whether Carmona was a supervisor. *Anderson*, 477 U.S. at 249. Only a jury may do so. Accordingly, summary judgment is **denied** as to Count I to the extent it is against Carmona.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 29) is: **DENIED** as to Count I (Pump Act); **GRANTED** as to Counts II (FLSA) and III (Hostile Work Environment); **GRANTED** as to Counts IV (Disparate Treatment) and V (PWFA) to the extent they are against Carmona individually; and **DENIED** as to Counts IV and V to the extent they are against the Port Authority and PATH. An appropriate Order accompanies this Opinion.

**DATED: 7/23/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**

18